UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

VLADIMIR BONDARENKO,

                    Petitioner,

        v.                                              **DECISION AND ORDER**
                                                        07-mc-00002
MICHAEL CHERTOFF, Secretary of the
Department of Homeland Security, ALBERTO
GONZALES, United States Attorney General,
EMILIO T. GONZALEZ, Director of United States
Citizenship and Immigration Services, ROBERT
S. MUELLER, III, Director of Federal Bureau of
Investigation, PAUL E. NOVAK, Director,
Vermont Service Center, USCIS,

                    Respondents.

═══════════════════════════════════

## I. INTRODUCTION

On January 17, 2007, *pro se* petitioner Vladimir Bondarenko commenced this action

alleging that respondents Chertoff, Gonzales, Gonzalez, Mueller and Novak have failed to

timely decide his Form I-485 Application to Adjust Status, which was received on April 23,

2004 and remains pending.  Petitioner asks this Court to: (1) declare respondents' failure

to act on his application unreasonable and arbitrary, (2) direct respondents to adjudicate

his application, (3) direct respondents to provide him with Notice of Approval, and (4)

award him attorney's fees and costs.

Respondents moved to dismiss petitioner's suit for lack of subject matter

jurisdiction.[1]  Having reviewed the parties' submissions on respondents' motion, this Court finds oral argument unnecessary.

## II.  BACKGROUND

Petitioner is a citizen of the Russian Federation and resides in Buffalo, New York. (Petition, ¶ 2.)  On April 24, 2003, the Research Foundation of the State University of New York at Buffalo submitted an I-140 Petition for Immigrant Worker on petitioner's behalf to the Department of Homeland Security ("the Department"), U.S. Citizenship and Immigration Services ("USCIS"), Vermont Service Center.  (*Id.*, Exs. B and F.)  The I-140 Petition, which classified petitioner as an Outstanding Professor or Researcher pursuant to 8 U.S.C. § 1153(b)(1)(B), was approved on December 19, 2004.  (*Id.* Ex. B.)

On April 23, 2004, petitioner filed with USCIS's Vermont Service Center a Form I-485 Application to Adjust to Permanent Resident Status ("adjustment application"). (*Id.*, Ex. A.)  On March 8, 2005, petitioner provided fingerprints to USCIS for the agency's required security checks.  (*Id.*, ¶ 15 and Ex. C.)  Petitioner states that more than two years ago, on May 18, 2005, the Vermont Service Center was processing Form I-485 applications received on June 24, 2004, which is two months after the date of his filing.  (*Id.*, ¶ 17 and Ex. D; *see generally*, https://egov.uscis.gov/cris/jsps/Processtimes.jsp?SeviceCenter=VSC for processing dates).

After filing his application, petitioner and others acting on his behalf made numerous inquiries about the status of his application and received several communications from USCIS.  On June 1, 2005, petitioner was advised by USCIS that a lack of manpower to

---

[1]  Respondents have filed a memorandum in support of their motion and petitioner has filed an opposing memorandum.

-2-

complete routine security checks was resulting in delays in adjudicating applications.  (*Id.* Ex. C.)  In response to an inquiry from petitioner's employer, USCIS stated, on November 9, 2005, that petitioner's application "will be processed within the normal processing time here at the Center."  (*Id.*, Ex. G.)  By letter dated December 7, 2005, USCIS again reported to petitioner that his case was delayed because results of the security checks had not been received.  (*Id.*, Ex. E.)  On or about August 29, 2006, the Vermont Service Center advised Congresswoman Louise Slaughter that petitioner's application was "currently going through the name/date of birth security clearance process."  (*Id.*, Ex. I.)  On December 27, 2006, USCIS informed petitioner that his "case is not yet ready for decision, as the required investigation into [his] background remains open."  (*Id.*, Ex. K.)  Petitioner wrote to the Federal Bureau of Investigation to inquire about the status of his security checks on December 4, 2006, but received no response prior to commencing this action.  (*Id.*, ¶ 25 and Ex. N.)

Petitioner's Form I-485 application remains pending more than three years and four months after filing.  By posting dated August 16, 2007, the Vermont Service Center reported that it was processing Form I-485 applications filed on July 24, 2006. (https://egov.uscis.gov/cris/jsps/Processtimes.jsp?SeviceCenter=VSC, last accessed on August 24, 2007.)

## III.  DISCUSSION

In moving for dismissal for lack of subject matter jurisdiction, respondents first argue that the adjustment of status process set forth in the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*, is "quintessentially discretionary," and is removed from the ambit

of judicial review by statute.   Second, respondents contend that neither the federal mandamus statute nor the Administrative Procedure Act ("APA"), both cited by petitioner as a basis for this Court's jurisdiction, is applicable here.   Though presented as discrete arguments, each prong of respondents' jurisdictional attack rests upon the assertion that the timing of the I-485 adjudication process is unreviewable because it is a matter committed to agency discretion.

## A.     Applicable Legal Standards

### 1.     Rule 12(b)(1)

Dismissal for lack of subject matter jurisdiction is proper where the district court lacks statutory or constitutional authority to decide the case.   FED. R. CIV. P. 12(b)(1); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).   The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.   Luckett v. Bure, 290 F.3d 493, 496 (2d Cir. 2002).   In considering whether jurisdiction exists, the court must "accept as true all material factual allegations in the complaint."   Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 3012, 82 L. Ed. 2d 139 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183, 105 S. Ct. 3012, 82 L. Ed. 2d 139 (1984)).   However, jurisdiction is to be shown affirmatively and the court is to refrain from "drawing from the pleadings inferences favorable to the party asserting it."   Shipping Fin. Servs., 140 F.3d at 131 (citing Norton v. Larney, 266 U.S. 511, 515, 45 S. Ct. 145, 69 L. Ed. 413 (1925)).

## 2.      APA Jurisdiction

The Administrative Procedure Act ("APA") permits persons adversely affected by an "agency action" to bring suit.  5 U.S.C. § 702.  Although the APA does not provide the Court with an independent basis for subject matter jurisdiction, Califano v. Sanders, 430 U.S. 99, 106-107, 97 S. Ct. 773, 90 L. Ed. 2d 192 (1977), the APA in conjunction with the federal question statute, 28 U.S.C. § 1331, may provide a jurisdictional basis.

Under the APA, agency actions are reviewable where a private right of action is provided by statute or where the action complained of is a "final agency action."  *Id.* § 704. For purposes of the APA, an "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act.*" *Id.* § 551(13) (emphasis added).

"A 'failure to act' . . . is simply the omission of an action without formally rejecting a request—for example, the failure . . . to take some decision by a statutory deadline." Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004).  Section 706(1) provides relief for a failure to act by directing that "the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."  However, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* action that it is *required to take*.  S. Utah, 542 U.S. at 64.  A required agency action is one that is demanded by law.  *Id.* at 65.  Therefore, acts that are committed to agency discretion by law are outside the purview of the APA.  5 U.S.C. § 701(a)(2).

### 3.      Mandamus Jurisdiction

Pursuant to 28 U.S.C. § 1361, "[t]he district courts . . . have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  However, the writ of mandamus is an "extraordinary remedy" that is seldom granted.  In re W.R. Huff Asset Mgmt. Co., 409 F.3d 555, 562 (2d Cir. 2005).   In the Second Circuit, the following prerequisites for issuance of a writ of mandamus are peremptory: "'(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the [respondent] to do the act in question; and (3) no other adequate remedy available.'" Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989) (quoting Lovallo v. Froehlke, 468 F.2d 340, 343 (2d Cir. 1972) (citing United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 543-44, 857 S. Ct. 844, 81 L. Ed. 1272 (1937); 28 U.S.C. § 1361), *cert. denied*, 411 U.S. 918, 93 S. Ct. 1555, 36 L. Ed. 2d 310 (1973)).

### B.      The Immigration and Nationality Act ("INA")

Respondents contend that the process of adjusting the status of an alien who has been lawfully admitted to the United States to that of permanent resident is discretionary and is removed from judicial review by 8 U.S.C. §§ 1252(a)(2)(B)(i), (a)(2)(B)(ii) and (g).

### 1.      Section 1252(a)(2)(B)

Section 1252(a)(2)(B) states, in relevant part, that no court has jurisdiction to review: "(i) any *judgment* regarding the granting of relief under section . . . 245,[2] or (ii) any other

---

[2] Section 245 of the Immigration and Nationality Act is codified at 8 U.S.C. § 1255 and provides, in pertinent part, that:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such

*decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title to be in the discretion of the Attorney General or the Secretary of Homeland Security of this title." (emphasis added).

Respondents rely on <u>Sharkey v. Ganter</u>, 05 Civ. 5577, 2006 U.S. Dist. LEXIS 2607 (S.D.N.Y. Jan. 24, 2006) in support of their argument that judicial review of petitioner's claims is precluded by § 1252(a)(2)(B)(i).  In <u>Sharkey</u>, the plaintiff requested a declaration that USCIS's "rescission" of her permanent resident status was unlawful and an order compelling USCIS to grant her permanent residency.  2006 U.S. Dist. LEXIS 2607, at *5. The Southern District held, among other things, that "the INA strips the district courts of jurisdiction to review 'any judgment' regarding the granting of relief under [8 U.S.C. § 1255]."  *Id*. at *12.  Because Sharkey was seeking to challenge a decision revoking her status, the Southern District concluded that this involved review of a "judgment" within the meaning of § 1252(a)(2)(B)(i), and was expressly barred by statute.  *Id*.  This Court agrees with that holding, but disagrees with respondents' suggestion that the jurisdictional bar is applicable to the claims here.

In this action, petitioner alleges that respondents willfully and unreasonably "delayed the processing of," are "witholding action on," and "failed to properly adjudicate" his I-485 application.  Respondents point to no statutory or decisional support for their argument that these alleged failures can be characterized as a "judgment" within the

---

regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

28 U.S.C. § 1255(a).  Here, petitioner alleges that he meets the statutory eligibility criteria and this Court accepts those fact allegations as true for purposes of this motion.

meaning of § 1252(a)(2)(B)(i).  "The term *judgment* is not defined in the INA, see 8 U.S.C. § 1001, so we understand it to be used in its everyday sense."  Cao v. Upchurch, 07-1232, 2007 U.S. Dist. LEXIS 51477, at *5 (E.D. Pa. July 16, 2007) (emphasis in original) (concluding that judgment in this context means the pronouncing of a deliberate opinion or the formation of an opinion or notion).  Moreover, to fall outside the scope of judicial review, the "judgment" in this case must be "regarding the granting of relief" under 8 U.S.C. § 1255.  *See* Iddir v. I.N.S., 301 F.3d 492, 497 (7th Cir. 2002) (the term "judgment" is used more than twelve times throughout the INA, and eight of those references denote "judgments" as orders, *i.e.*, as pertaining to actual decisions).  Accepting petitioner's fact allegations as true for purposes of this motion, this Court concludes that respondents have not arrived at any "judgment" regarding the grant or denial of permanent resident status.[3] Because petitioner's request to compel an adjudication does not involve review of a "judgment," § 1252(a)(2)(B)(i) does not preclude judicial review.  *See* Cao, 2007 U.S. Dist. LEXIS 51477, at *12 (finding that Sharkey has no relevance where the request is one to compel an adjudication and no denial or revocation of permanent resident status has occurred).

Respondents also rely on § 1252(a)(2)(B)(ii) to urge a jurisdictional bar.  That subsection bars review of "any other decision or action," the authority for which is specified "under this title" to be discretionary.  The phrase "under this title" refers to Subchapter II of Chapter 12 of Title 8 of the United States Code, which includes §§ 1151-1381.  Koren v. Chertoff, 07cv157, 2007 U.S. Dist. LEXIS 35128, at **9 (D. Conn. May 14, 2007) (citing

---

[3]  Indeed, respondents repeatedly advised petitioner that the processing of his application was delayed and that a decision would be made at some point in the future.  (Petition, Exs. C, E, G, I.)

Sanusi v. Gonzales, 445 F.3d 193, 198 (2d Cir. 2006)).

A number of courts have concluded that § 1252(a)(2)(B)(ii)'s jurisdiction-stripping provision is to be read narrowly. "'The key to § 1252(a)(2)(B)(ii) lies in its requirement that the discretion giving rise to the jurisdictional bar must be "specified" by statute.' While 8 U.S.C. § 1255(a) specifically places the decision of whether to adjust status in the discretion of the Attorney General, it says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let such a petition languish indefinitely." Cao, 2007 U.S. Dist. LEXIS 51477, at *6-7 (quoting Camphill Soltane v. DOJ, 381 F.3d 143, 146 (3d Cir. 2004)); see also, Alaka v. AG of the United States, 456 F.3d 88, 95 (3d Cir. 2006) ("The jurisdiction stripping language [of § 1252] applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion."); Zhao v. Gonzales, 404 F.3d 295, 303 (5th Cir. 2005) (rejecting the notion that a *regulation*, as opposed to a *statute*, can foreclose judicial review pursuant to § 1252(a)(2)(B)(ii), noting that the "statutory language is uncharacteristically pellucid on this score"); Spencer Enter., Inc. v. United States, 345 F.3d 683, 690 (9th Cir. 2003) (in enacting § 1252(a)(2)(B)(ii), Congress did not intend to withdraw jurisdiction over all discretionary decisions, only those where the INA specifies that "the right or power to act is entirely within [the Attorney General's] judgment or conscience"); Iddir, 301 F.3d at 497 (by its use of the terms "judgment" and "decision or action," § 1252(a)(2)(B) "only bars review of actual discretionary decisions to grant or deny relief under the enumerated sections, including section 1255").

While the Second Circuit has not yet spoken on the precise question presented in

this case, it has acknowledged that § 1252(a)(2)(B)(ii) places beyond judicial review only those decisions specified by statute to be in the discretion of the Attorney General.  Sanusi, 445 F.3d at 198 (holding that a decision by an IJ to grant or deny a continuance in an immigration proceeding is not specified by statute as beyond judicial review).  This approach is consistent with the Circuit Court's recognition of "the 'strong presumption in favor of judicial review of administrative action.'"  Sepulveda v. Gonzales, 407 F.3d 59, 62 (2d Cir. 2006) (quoting INS v. St. Cyr, 533 U.S. 289, 298, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001), and holding that § 1252(a)(2)(B) does  not strip courts of jurisdiction to review nondiscretionary decisions).

       This Court concludes, as have a number of other district courts, that the INA does not give the Attorney General authority to decide whether or not to adjudicate an application, nor does it specify that the pace of adjudication is committed entirely to the Attorney General's discretionary judgment.  Absent express provisions to that effect, § 1252(a)(2)(B)(ii) does not bar claims of a failure to adjudicate or adjudicatory delay.  Koren, 2007 U.S. Dist. LEXIS 35128, at *15 (holding that §1252(a)(2)(B)(ii) does not divest court of subject matter jurisdiction over claim that adjudication of adjustment of status application has been unreasonably delayed); Huang v. Gonzales, C07-0096, 2007 U.S. Dist. LEXIS 32276, at **8-10 (W.D. Wash. May 2, 2007) (holding that §1252(a)(2)(B)(ii) does not divest the court of jurisdiction over action seeking to compel adjudication of I-485 application); Song v. Klapakas, 06-05589, 2007 U.S. Dist. LEXIS 27203, at *11-12 (E.D. Pa. 2007) (§ 1252(a)(2)(B)(ii) does not bar judicial review where a plaintiff has neither been denied nor granted relief, but is simply seeking to rectify inaction); Loo v. Ridge, 04 CV 5553, 2007 U.S. Dist. LEXIS 17822, at *9 (E.D.N.Y. Mar. 14, 2007) (§ 1252(a)(2)(B) does not bar claim

that USCIS is required to adjudicate application; this is a non-discretionary, purely legal claim over which court has jurisdiction); Duan v. Zamberry, 06-1351, 2007 U.S. Dist. LEXIS 12697, at *7 (W.D. Pa. Feb. 23, 2007) ("Although the speed of processing may be discretionary in the sense that it is determined by choice, and that it rests on various decisions that Defendants may be entitled to make, it is not discretionary in the manner required by the jurisdiction-stripping language of the [Illegal Immigration Reform and Immigrant Responsibility Act of 1996] IIRIRA."); Kim v. Ashcroft, 340 F. Supp. 2d 384, 389 (S.D.N.Y. 2004) (while § 1255 makes the decision to grant or deny wholly discretionary, whether to make a decision on an adjustment application is not a discretionary call); Batista v. I.N.S., 99 Civ. 2847, 2000 U.S. Dist. LEXIS 1647, at **6 (S.D.N.Y. Feb. 22, 2000) (§ 1252(a)(2)(B)(ii) does not apply to bar claims of failure to make a decision or take an action at a reasonable pace).

In moving to dismiss, respondents do not distinguish between a decision to grant or deny an I-485 application, which Congress has placed wholly within the Attorney General's discretion, and decisions as to whether and when to adjudicate an application at all. Rather, they offer Safadi v. Howard, 466 F. Supp. 2d 696 (E.D. Va. 2006) for the proposition that the entire process of I-485 adjudications is discretionary and falls within the INA's jurisdiction-stripping provisions. District courts across the country have split on this issue, with some holding that all aspects of status adjustment are matters of discretion and others, several of which are cited above, holding that there is a non-discretionary duty to complete the adjudication within a reasonable time frame. While respondents' argument is not without decisional support, this Court finds most persuasive those cases holding that USCIS has a duty to adjudicate applications without unreasonable delay. Moreover, as

discussed below, this Court expressly rejects the Safadi court's analysis and its limited holding.

In Safadi, the plaintiff sought an order compelling USCIS to adjudicate immediately his I-485 application, which had been pending for nearly four years.  The district court held that § 1252(a)(2)(B)(ii) precludes review of the entire process of an adjustment application, including the pace at which the process proceeds.  466 F. Supp. 2d at 699.  However, the court went on to note that its decision was based on the particular facts of that case, where USCIS appears to have demonstrated to the court's satisfaction that the delay in processing, though lengthy, was not unreasonable.  "Importantly, not addressed here is the question whether jurisdiction would exist in a district court to review plaintiff's case where USCIS refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application."  Id. at 700.

In short, the Safadi court and some others, e.g. Xu v. Chertoff, 06-CV-15398, 2007 U.S. Dist. LEXIS 55215 (E.D. Mi. July 31, 2007), have determined that the pace of adjudication is unreviewable, but if there is some evidence of deliberate inaction, bad faith or a delay so lengthy that it is tantamount to a refusal to process, perhaps the claim would be reviewable.  This Court finds nothing in the reading of § 1252(a)(2)(B) that suggests such malleability.[4]  Indeed, I find Safadi's reasoning problematic because it collapses two

_____

[4]  The District Court for the Western District of Pennsylvania noted that the Safadi caveat gives rise to the incongruous possibility that a reasonable delay would qualify as an "action" barring jurisdiction, while an unreasonable delay might not.  Duan, 2007 U.S. Dist. LEXIS 12697, at *9.  In rejecting Safadi, the district court noted that its holding would render "toothless all timing restraints, including those imposed by the APA," and amount to "a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters."  Id.  The Eastern District of Pennsylvania echoed that view, noting that "[t]he statutory language that Safadi interprets allows for no . . . exception, so it is difficult to understand how Section 1252(a)(2)(B)(ii)'s jurisdiction-stripping could suddenly become inapplicable in cases of extreme delay."  Cao, 2007 U.S. Dist. LEXIS 51477, at *8.

discrete inquiries—is jurisdiction barred by § 1252(a)(2)(B)(ii) and, if not, does the case succeed on the merits—into one.  In this Court's view, the better course is to hold that § 1252(a)(2)(B)(ii) does not bar review of failure to adjudicate and unreasonable delay claims for the reasons stated above, and then reject such claims on the merits if the facts do not support them.[5]

As one court succinctly observed, "the title of § 1252(a)(2)(B)—'*Denials* of Discretionary Relief*'*— suggests that the section's primary purpose is to preclude courts from entertaining appeals from disappointed aliens who have had their applications denied;" *i.e.*, where the application actually has been adjudicated. Elmalky v. Upchurch, 06-CV-2359-B, 2007 U.S. Dist. LEXIS 22353, at *16 (N.D. Tex. Mar. 28, 2007) (emphasis supplied) (rejecting Safadi and holding that  § 1252(a)(2)(B)(ii) does not bar review of plaintiff's claim that his application was not promptly acted upon); *see also*, Fu v. Gonzales, C 07-0207, 2007 U.S. Dist. LEXIS 39623, at **16 (N.D. Cal. May 17, 2007) (rejecting Safadi on ground that the statute's plain language addresses "decision or action" on immigration matters, not inaction, which was the subject of the complaint under consideration).

For the reasons stated, this Court finds that its review of petitioner's claim that USCIS has improperly delayed processing of his application is not barred by § 1252(a)(2)(B)(ii).

---

[5]  And, of course, if subject matter jurisdiction otherwise exists.

### 2.    8 U.S.C. § 1252(g)

Respondents also contend that review of petitioner's claim is barred by 8 U.S.C. § 1252(g) which provides, in pertinent part, that: "[e]xcept as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act."

It is well-settled that § 1252(g) limits judicial review only with respect to three discretionary decisions made in the removal context. Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 483, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999) (the statutory language represents the initiation or prosecution of various stages of the deportation process, at each stage of which, the Executive has discretion to abandon the endeavor).  Thus, courts have routinely held that where a petition for adjustment of status "is separate and distinct from any matter related to an order of deportation, § 1252(g) 'has nothing to do with the . . . case.'" Sabhari v. Reno, 197 F.3d 938, 942 (8th Cir. 1999) (quoting Shah v. Reno, 184 F.3d 719, 722 (8th Cir. 1999)); see also, Cao, 2007 U.S. Dist. Lexis 51477, at *9-11 (examining statutory construction and declining to apply § 1252(g) outside the removal context); Landry v. Chertoff, 07-0506, 2007 U.S. Dist. LEXIS 49081 (E.D. La. July 5, 2007) (§ 1252(g) is inapplicable to plaintiff's claim of unreasonable delay in adjudicating Form I-485 application because that provision applies only to removal proceedings); Fu, 2007 U.S. Dist. LEXIS 39623, at *19 (the jurisdiction-stripping provision of § 1252(g) is narrowly construed and relates solely to removal orders); Elmalky, 2007 U.S. Dist. LEXIS 22353, at *17-19 (§ 1252(g)'s jurisidiction strip is limited to the removal

context); <u>Loo</u>, 2007 U.S. Dist. LEXIS 17822, at *9, n.3 (§ 1252(g) did not bar review of wife's action to compel adjudication of her I-485 application, but review of husband's claim was barred because he was subject to a removal order); <u>Yu v. Brown</u>, 36 F. Supp. 2d 922, 934 (D. N.M. 1999) (§ 1252(g) relates solely to removal and does not bar court from considering claim of failure to adjudicate an adjustment application).  In sum, § 1252(g)'s narrow bar leaves intact judicial review of all other immigration matters properly before the Court.

Respondents cite to no decisional authority to the contrary.  <u>Gomez-Chavez v. Perryman</u>, 308 F. 3d 796 (7th Cir. 2002), and all other cases respondents rely on, involved challenges to decisions or actions in the removal context and are inapplicable here. Petitioner's action does not arise from a decision that has been or will be made in a removal proceeding and, accordingly, is not barred by § 1252(g).

**C.    Subject Matter Jurisdiction**

Although this Court has determined that its consideration of petitioner's claim is not barred by the INA, the Court must still determine whether there is subject matter jurisdiction over the claim presented and relief requested.  Petitioner grounds his claim that subject matter jurisdiction exists in a number of statutes, including, the Administrative Procedure Act, 5 U.S.C. §§701 *et seq.,* the federal question statute, 28 U.S.C. § 1331, and the Mandamus Act, 28 U.S.C. § 1361.

**1.    The APA**

As previously noted, the APA does not provide the Court with an independent basis for jurisdiction.  <u>Califano</u>, 430 U.S. at 106-107.  Here, however, section 6 of the APA in

conjunction with the federal question statute does provide a basis for subject matter jurisdiction over petitioner's claim.  Koren, 2007 U.S. Dist. LEXIS 35128, at *16.

The federal question statute confers jurisdiction on the district courts over "all civil actions arising under" federal law.  28 U.S.C. § 1331.  This statute has been interpreted to mean that federal question jurisdiction exists where the claim: (1) turns on the interpretation of the laws or Constitution of the United States, and (2) is not patently without merit.  Kim, 340 F. Supp. 2d at 388.  Petitioner's claim in this case turns on the interpretation of section 6 of the APA, which provides, in pertinent part, that "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555[6] (emphasis added).  Section 706(1) of Title 5 provides relief for a failure to act by authorizing the district courts to "compel agency action unlawfully withheld or unreasonably delayed."

Respondents' argument against jurisdiction is two-fold.  First, they contend that the pace of adjudication is unreviewable because Congress did not expressly provide a time limitation for adjudication in 8 U.S.C. § 1255(a).  According to respondents, absent a specific time frame, there is no discrete action required and there can be no claim that an action demanded by law has been unreasonably delayed.  *See* Grinberg v. Swacina, 478 F. Supp. 2d 1350 (S.D. Fla. 2007) (noting that Congress specifically provided for a 120 day limit for naturalization, but provided no time limit for adjustment of status applications).

_____

[6] Although the Petition expressly refers to 5 U.S.C. §§ 701 *et. seq.* (Administrative Procedure Act) as the basis for jurisdiction, this Court construes the *pro se* pleading broadly as including section 6 of the APA, as well.

Second, respondents urge that the pace of adjudication is committed to agency discretion by law and is therefore unreviewable under the APA.  These arguments are addressed in turn.

As for the first argument, although Congress did not set forth a time table or deadline for adjudication in § 1255(a)[7]:

> at some point, [respondents'] failure to take any action runs afoul of § 555(b).  Were it otherwise, [USCIS] could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so.  Such an outcome defies logic—[USCIS] simply does not possess unfettered discretion to regulate aliens to a state of "limbo," leaving them to languish there indefinitely.  This result is explicitly closed by the APA.

Koren, 2007 U.S. Dist. LEXIS 35128, at *21 (quoting Kim, 340 F. Supp. 2d at 393).  "[W]hen an agency is required to act—either by organic statute or by the APA—within [a] . . . reasonable time, § 706 leaves in the courts the discretion to decide whether agency delay is unreasonable." Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1998).  In short, the time for adjudication of adjustment applications need not be expressly defined in the INA for an undue delay claim to be actionable because the APA's reasonableness requirement acts as a meaningful standard against which to judge agency action.  *See* Huang, 2007 U.S. Dist. LEXIS 32276 (jurisdiction is not precluded by statute, and courts routinely assess the reasonableness of the pace of agency action under the APA); Duan,

---

[7] Petitioner contends that another statutory provision, 8 U.S.C. § 1571, requires that Form I-485 adjudications be completed within six months of filing.  Section 1571 provides that "[i]t is the sense of Congress that the processing of an immigration benefit application *should* be completed not later than 180 days after the initial filing of the application. . . ." (emphasis added).  Respondents argue, and this Court agrees, that this language is not mandatory.  It expresses a goal or expectation, not a requirement.  However, this Court disagrees with respondents' related conclusion that the absence of an express statutory deadline renders the pace of adjudication unreviewable.

2007 U.S. Dist. LEXIS 12697, at *13 (rejecting the contention that jurisdiction does not exist absent a specific statutory or regulatory standard).

Accepting respondents argument would mean that, regardless of the circumstances, there is never a point at which USCIS's delay in processing an application could be deemed unreasonable.  Other courts have concluded, and this Court agrees, that such a result defies logic.  I also note that Grinberg, on which respondents rely,[8] does not stand for the proposition that an express statutory limitation is required before subject matter jurisdiction can be found.  While the Grinberg court noted the absence of an express time limitation, its determination that no APA jurisdiction exists was premised on its agreement with Safadi that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of claims relating to the pace of adjudication, and its conclusion that the APA can not supersede an express statutory bar.  This Court already has explained its rejection of Safadi and finds Grinberg's holding unpersuasive for the same reasons.

Respondents' second argument is also unavailing.  Respondents cite numerous cases in support of their assertion that "a significant body of authority" has rejected APA jurisdiction on the ground that the pace of adjudication is wholly discretionary.  The cited cases are distinguishable for several reasons.  First, many of the cases found that 8 U.S.C. § 1252 and/or a related regulation bars judicial review of undue delay or failure to adjudicate claims, thereby preventing the claims from being considered under the APA.[9]

---

[8]  Respondents also rely on Manzoor v. Chertoff, 472 F. Supp. 2d 801 (E.D. Va.  2007).  This Court disagrees with respondents' assertion that Manzoor—which involves the naturalization process, not the status adjustment process— has any applicability to the question of whether the Court has jurisdiction in this case.

[9]  See Grinberg, 478 F. Supp. 2d 1350; Safadi, 466 F. Supp. 2d 696; Sharkey, 2006 U.S. Dist. LEXIS 2607; Mustafa v. Pasquerell, 2006 U.S. Dist. LEXIS 8047 (W.D. Tex. Jan., 10, 2006).

While this Court has acknowledged the existence of that line of cases, I already have rejected their reasoning and concluded that USCIS does have a non-discretionary duty to adjudicate applications within a reasonable time.  Consistent with that holding, I find that § 1252's jurisdiction-stripping provisions do not preclude the exercise of APA jurisdiction over petitioner's claim.

In two other cases, the plaintiff sought to compel the scheduling of an interview with an immigration officer as  part of the adjudication process.[10]  The courts in those cases found that the interview is not demanded by law because USCIS has discretion to waive that part of the review process and, thus, could not be compelled under the APA to conduct an interview.  Petitioner is not seeking the scheduling of an interview here, and respondents have cited to no authority that would support the conclusion that USCIS has discretion not to adjudicate petitioner's application within a reasonable time.

Finally, respondents cite to two cases that are inapplicable here because the jurisdiction-stripping provisions of 8 U.S.C. § 1252 did apply to the relief requested.  In Keane v. Chertoff, 419 F. Supp. 2d 597 (S.D.N.Y. 2006), the plaintiff sought rescission of a denial of the I-485 application, and in Karan v. McElroy, 02 Civ. 6678, 2003 U.S. Dist. LEXIS 9487 (S.D.N.Y. May 23, 2003), the plaintiff requested that USCIS be directed to favorably adjudicate the application.

Although respondents did not make any argument in their memorandum on this basis, this Court notes that the petition includes a request for an order "requiring

---

[10]  Zheng v. Reno, 166 F. Supp. 2d 875, 879-80 (S.D.N.Y. 2001) (8 C.F.R. § 245.6 provides that the interview by an immigration officer may be waived "when it is determined by the Service that an interview is unnecessary); Rahman v. McElroy, 884 F. Supp. 782 (S.D.N.Y. 1995).

Defendants to provide the Plaintiff with a Notice of Approval." (Petition, ¶ 31(b)).  Were petitioner continuing to pursue this relief, this Court would not have subject matter jurisdiction over a request for a favorable adjudication, because the outcome of the adjudication indisputably lies in the Attorney General's discretion.  Ibrahim v. Chertoff, 06cv2071-L, 2007 U.S. Dist. LEXIS 38352, *10-11 (S.D. Cal. May 25, 2007) (granting or denying application is within Attorney General's discretion and, therefore, court lacks jurisdiction to award such relief); Loo, 2007 17822, at *13 (action requesting that USCIS be directed to approve application is one over which the court would not have jurisdiction); Espin v. Gantner, 381 F. Supp. 2d 261 (S.D.N.Y. 2005) (no jurisdiction over action to compel approval of adjustment application). However, petitioner has expressly withdrawn this particular request in his memorandum in opposition to respondents' motion.[11]  What remains is his request that USCIS be directed to adjudicate his unreasonably delayed application.

Having found that USCIS has a non-discretionary duty to adjudicate Form I-485 applications, this Court finds that subject matter jurisdiction exists under the APA and 28 U.S.C. § 1331.

### 2.    Mandamus Jurisdiction

Petitioner also claims jurisdiction under the federal mandamus statute.  28 U.S.C. § 1361.  Respondents offer the same arguments in opposition to both APA and mandamus jurisdiction, implicitly conceding that the standards by which such claims are assessed are

---

[11]  Therein, he agrees with respondents that the granting or denying of an application is purely discretionary (Docket No. 6 at 2), and concedes that an applicant does not have a clear right to have his application adjudicated favorably (Id. at 4).

the same.

This Court agrees with the many district courts that have found APA and mandamus jurisdiction to be co-extensive in cases of this nature.  *See, e.g.,* Cao, 2007 U.S. Dist. LEXIS 51477, at *11-16 (for purposes of compelling agency action, APA and mandamus statute are co-extensive and jurisdiction exists under both); Koren, 2007 U.S. Dist. LEXIS 35128, at *24-25 (applying same analysis to both APA and mandamus and finding jurisdiction under both); Huang, 2007 U.S. Dist. LEXIS 32276, at *11-15 (addressing APA and mandamus separately, and finding jurisdiction under both); Duan, 2007 U.S. Dist. LEXIS 12697, at *10-14 (same);  Yu, 36 F. Supp. 2d at 928 (the two statutes are merely different means of compelling an agency to take action which by law it is required to take). Because the availability of a writ of mandamus in this case is co-extensive with the availability of relief under 5 U.S.C. § 706(1), there is no need for a separate analysis to conclude that 28 U.S.C. § 1361 also provides a jurisdictional basis for petitioner's claim.

## III. CONCLUSION

For the foregoing reasons, this Court finds that the Attorney General has a non-discretionary duty to adjudicate I-485 adjustment applications within a reasonable time. This Court's exercise of jurisdiction is not barred by 8 U.S.C. §1252, and jurisdiction exists under both the APA, in conjunction with 28 U.S.C. § 1331, and the federal mandamus statute.   Accordingly Respondents' Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied.

**IV. ORDER**

IT HEREBY IS ORDERED, that the Respondents' Motion to Dismiss for Lack of

Subject Matter Jurisdiction (Docket No. 4) is DENIED.

SO ORDERED.


Dated:   September 8, 2007
         Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge